UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| PARKVIEW HOSPITAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:07-CV-0208 WCL |
| | ) | |
| WHITE'S RESIDENTIAL & FAMILY SERVICES, INC. and KEY BENEFIT ADMINISTRATORS, INC. | ) ) ) | |
| | ) | |
| Defendants | ) ) | |

## OPINION AND ORDER

Before the court is Defendants' White's Residential & Family Services, Inc.'s ("White's") and Key Benefit Administrators, Inc.'s ("Key Benefit's") Motion to Dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6). On November 5, 2007, Parkview Hospital ("Parkview") responded in opposition to which the Defendants replied on November 21, 2007. For the following reasons, the Defendants' Motion to Dismiss will be DENIED. Plaintiff will have thirty (30) days to amend its Complaint to seek relief pursuant to ERISA.

## APPLICABLE STANDARDS AND FACTUAL ALLEGATIONS

"When a federal court reviews the sufficiency of a complaint . . . its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In determining the propriety of dismissal under Fed.R.Civ.P. 12(b)(6), the court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences therefrom in

1

favor of the plaintiff." *Perkins v. Silverstein*, 939 F.2d 463 (7th Cir. 1991). *See also Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1032-33 (7th Cir. 1987). "A complaint . . . should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Mindful of these standards, the relevant facts, as set forth in the Complaint are as follows:

Parkview is a not-for-profit corporation providing hospital services in Fort Wayne, Indiana. (Complaint, ¶1). White's is an Indiana corporation with its principal place of business located in Wabash County, Indiana. (*Id.* at ¶2). Key Benefit is an Indiana corporation with its principal place of business in Marion County, Indiana.

At all times pertinent to this case, Charlie Cannon ("Mr. Cannon") was an employee of White's. (*Id.* at ¶3). White's maintains a self-funded group health insurance plan for its eligible employees and their families, hereinafter "the Plan." The Plan is administered by Key Benefit. (Complaint, ¶6). Prior to May 3, 2006, Mr. Cannon enrolled his wife, Bree Cannon ("Mrs. Cannon"), and his dependents in the Plan. On May 3, 2006, Mrs. Cannon gave birth to twins, Clarissa and Carson Cannon, at Parkview.

Parkview provided hospital services to Clarissa and Carson until June 28, 2006 and July 25, 2006, respectively. Within days after their birth, Parkview contacted Key Benefit for pre-certification of the twins' coverage. On May 8, 2006, Key Benefit verified that the twins were insured under the plan. (*Id.* at ¶10).

In July 2006, Parkview and Key Benefit, through its agent, Cost Pro, Inc., entered into a Re-Pricing Agreement ("the Agreement") whereby Parkview agreed to a "prompt pay" discount of 10%

2

in lieu of an audit, and waiver of any usual and customary reduction, or bundling of charges. (*Id.* at ¶12). Parkview further agreed not to charge an "out-of-network" penalty. (*See Complaint, Exhibit A*). The Agreement further provides that "Payment of benefits, if any, is subject to all terms and conditions of the benefit program. Therefore, this letter of agreement does not constitute, nor should it be construed as a guarantee of benefit payment by the Payor." (*Id.*). Pursuant to this Agreement, Key Benefit paid the full amount due for Clarissa's hospital services. However, Key Benefit has paid only $122,391.95 of the hospital charges for Carson leaving a balance due of $165,528.64.

Following Carson's discharge from Parkview, representatives of White's and Key Benefit requested that Mr. and Mrs. Cannon execute a cancellation of coverage for Clarissa and Carson. (Complaint, at ¶16). White's and Key Benefit requested the Cannons to backdate the cancellation to May 3, 2006 and represented to them that Medicaid[1] would cover the bills so as to shelter White's and Key Benefit for the hospital services provided to the twins. (*Id.* at ¶17). The Cannons then signed the cancellation of coverage form and backdated it to May 3, 2006.

White's and Key Benefit have refused to pay Parkview for all of the services provided to Carson and have demanded repayment of the amounts paid by White's and Key Benefit to Parkview for Clarissa's hospital care. (Complaint, at ¶19). Medicaid has refused to pay the services for Carson because its records show that Carson and Clarissa were covered by the Plan during the months of May, June, and July 2006. (*Id.* at ¶21).

---

[1]Although it is not pled in the Complaint, Defendants have indicated in their brief that Mrs. Cannon applied for various state benefits on May 22, 2006, including: (1) unemployment benefits for herself; (2) food stamps for all five members of the Cannon family; and (3) medical coverage through Hoosier Healthwise (Medicaid/FSSA) for herself, the twins, and a third child. The state of Indiana notified the Cannons that the twins were eligible for Medicaid coverage as of the twins' date of birth.

On July 17, 2007, Parkview, acting as an assignee of the Cannons' rights under the Plan,[2] brought the instant lawsuit, originally filed in state court, alleging two counts of breach of contract (Counts I and II), fraud (Count III), and misrepresentation/fraudulent inducement (Count IV).[3] Defendants removed the action to federal court alleging the existence of a federal question,[4] namely that the Complaint is, in substance, a claim for benefits by the assignee of a plan participant/beneficiary against a self-funded group health plan and preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1132(a)(1)(B) and §1001, et seq. ("ERISA"). Defendants then filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(B)(6) arguing that the Complaint asserts state law claims preempted by ERISA and, even if Parkview was permitted to amend its complaint to properly assert its ERISA claim, the prerequisites to an ERISA lawsuit have not been met by Parkview.

---

[2] The Cannons assigned their rights under the Plan to Parkview.  See Complaint, at ¶21 and Exhibit C attached thereto.

[3] Key Benefit has also filed a counterclaim for a return of the payments it made to Parkview on behalf of Clarissa.

[4] For federal question jurisdiction to exist, a case must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for '[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.' " *Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir.1995) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987)). "Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading." *Rice,* 65 F.3d at 639. The issues raised in the plaintiff's complaint, not those added in the defendant's response, control the litigation.
    Although a preemption defense cannot be the basis for original federal jurisdiction, "the Supreme Court has fashioned an exception to this rule where Congress has completely preempted a given area of state law." *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir.1989). This jurisdictional doctrine provides that "to the extent that Congress has displaced a plaintiff's state law claim, that intent informs the well-pleaded complaint rule, and a plaintiff's attempt to utilize the displaced state law is properly 'recharacterized' as a complaint arising under federal law." *Rice,* 65 F.3d at 640 n. 2 (citing *Taylor,* 481 U.S. at 64, 107 S.Ct. at 1547). Thus, federal subject matter jurisdiction exists if the complaint concerns an area of law "completely preempted" by federal law, even if the complaint does not mention a federal basis of jurisdiction. *Rice*, 65 F.3d at 642

4

**DISCUSSION**

**ERISA Preemption**

Congress enacted ERISA to provide comprehensive regulation of certain employee benefit plans. It protects "the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto...." 29 U.S.C. § 1001(b). Indeed, "employees depend on ERISA for assurance that they will at least know what their benefits are so that they can plan accordingly." *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 793 (7th Cir.1996).

Because Congress intended ERISA to provide comprehensive coverage, section 514(a) of ERISA states that ERISA supersedes "any and all State laws" that relate to "any employee benefit plan." 29 U.S.C. § 1144(a). In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 (1983), the Court held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96-97. It went on to stress that ERISA does not preempt "only state laws specifically designed to affect employee benefit plans," *id.* at 98, 103 S.Ct. 2890, or "only state laws dealing with the subject matters covered by ERISA," *id.* Indeed, the Supreme Court has consistently reminded courts that ERISA's preemption of state laws as enunciated in § 514(a) is "clearly expansive," *see Egelhoff v. Egelhoff ex. rel. Breiner,* 532 U.S. 141, 146, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), and the Seventh Circuit has likewise interpreted the provision broadly, *see Pohl v. Nat'l Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992). Because of this statutory scheme, "[a] suit to enforce a claim for benefits under an ERISA plan can be brought only under ERISA; parallel state law remedies are preempted." *Rud v. Liberty Life Assur. Co. of Boston,* 438 F.3d 772, 777-78 (7th Cir.2006) (citing *Rush Prudential HMO, Inc. v. Moran,*

5

536 U.S. 355, 392, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002)).

In this case, Parkview's claims of breach of contract, fraud, and fraudulent inducement arise under state law. In its motion to dismiss, Defendants argue that ERISA preempts Parkview's state law claims because they "relate to" a benefit plan covered by ERISA. In response, Parkview concedes that "ERISA preempts those claims in which Parkview is standing in the shoes of the Cannons and seeking 'coverage' from White's and Key Benefit pursuant to the Plan." (Response at p. 11). However, Parkview further contends that at least some of its claims do not qualify for ERISA preemption because they arise from duties owed by Key Benefit to Parkview independent of Key Benefit's obligations to the Cannons under the ERISA plan.

In support of this position Parkview cites to *Vencor Hospitals Limited Partnership v. Aetna Life Insurance Company,* 2001 WL 1029109 (S.D.Ind. Sept. 6, 2001) wherein our colleagues in the Southern District determined that Vencor could proceed against Aetna on its state law claims since they were based upon promises that, while clearly an outgrowth of the contractual relationship between beneficiary and administrator, gave rise to a separate relationship between the health care provider and the plan administrator.

In that case, the hospital (Vencor) contacted the insurance carrier (Aetna), to verify coverage for a plan participant. In response to the inquiry, Aetna represented that it would pay out a lifetime maximum benefit of $500,000 on the plan participant's behalf. Vencor then, in reliance upon the representation and subsequent representations made by Aetna, admitted the plan participant and provided services totaling $646,864 over a one-year period. When it came time for payment, Aetna asserted that the plan participant was entitled to only a $50,000 lifetime maximum benefit. Vencor, in turn, filed suit in federal court against Aetna alleging promissory estoppel, fraud, and negligent

6

misrepresentation. Aetna moved for summary judgment claiming that these claims were preempted by ERISA.

In concluding that Vencor was entitled to maintain its state law claims, the court noted that a "plurality of circuits have found that ERISA does not preempt such claims." *Vencor,* 2001 WL 1029109 at *2 (citing circuit cases from Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits). Moreover, the court went on to articulate that:

> Courts have declined to preempt claims by third-party providers attempting to enforce promises made by plan administrators that do not alter the primary relationship between beneficiary and administrator under the plan. Although such promises and reasonable reliance clearly grow out of the contractual relationship between beneficiary and administrator, they give rise to a separate relationship between the health care provider and the plan administrator for which courts have recognized and permitted state law remedies.

*Id.* at *3.

On its face, *Vencor* provides some rationale for not preempting Parkview's state law claims. Clearly, Parkview's complaint alleges the existence of a separate relationship by virtue of the pre-certification as well as by the Agreement. Key Benefit, however, argues that all of these claims rise or fall on a determination of coverage under the Plan and therefore, all of the claims relate to and require interpretation of the Plan. Key Benefit further identifies the coverage issue as whether the Plan Administrator "acted within its authority in administering, and its discretion in interpreting, the Plan." (Reply at p.1).

This argument has some teeth as well. In *Vencor*, the court distinguished between cases where third-party providers were attempting to enforce promises made by plan administrators that do not alter the primary relationship between beneficiary and administrators under a plan and cases where third-party providers are attempting to enforce or expand the rights of beneficiaries under

7

the terms of ERISA plans, or where third-parties assert rights as assignees of plan beneficiaries. *Vencor*, at *3.  As *Vencor* noted, Courts have declined to preempt claims that fall into the former category, see *The Meadows v. Employers Health Insurance*, 47 F.3d 1006, 1008 (9th Cir. 1995); *Hospice of Metro Denver, Inc. V. Group Health Ins. Of Oklahoma, Inc.*, 944 F.2d 752 (10th Cir. 1991); but, as to the latter category, Courts have consistently preempted these families of state law claims.  *Cromwell v. Equicor Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991); *Memorial Hospital Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990); *Coonce v. Aetna Life Ins. Co.*, 777 F.Supp. 759 (W.D. Mo. 1991).

This distinction is dispositive here.  In this case, Parkview is the Cannons' assignee and as such, it is foreclosed by ERISA's preemption provisions from bringing any state law claims which alter the Cannons' relationship with the administrator.  Parkviews claims of fraudulent inducement, fraud, and breach of contract all seek to expand upon the coverage afforded to the Cannons under the Plan and to alter the relationship between the Plan and its beneficiary.  They are not independent claims for relief that are distinct from the terms of the Plan.   The ultimate question in this case is whether Parkview is entitled to payment from the Plan for services rendered to the Cannon twins.  The existence of coverage under the Plan is a prerequisite to that entitlement and it is this question that each of the state law claims seek to have resolved.  Accordingly, the court concludes that the entirety of Parkview's complaint must be recharacterized as a claim under ERISA.  To that end, Parkview has thirty (30) days to file an amended complaint to assert its claims under ERISA.

**Exhaustion of Remedies**

Defendants urge, however, that even if Parkview's complaint is recharacterized as an

8

ERISA claim or Parkview is permitted to amend its complaint, the complaint would still suffer from one fatal flaw – a failure of Parkview to exhaust its administrative remedies prior to bringing suit. In response, Parkview contends that this argument relies on facts outside the scope of the Complaint and, additionally, that it is entitled to proceed without exhausting internal remedies if to do so would be futile.

As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies. *Zhou v. Guardian Life Ins. Co. of America,* 295 F.3d 677, 679 (7th Cir. ,2002); *Doe v. Blue Cross & Blue Shield United of Wisc.,* 112 F.3d 869, 873 (7th Cir.1997). This requirement furthers the "goals of minimizing the number of frivolous lawsuits" and enables the preparation of a more complete factual record for judicial review. *Gallegos v. Mt. Sinai Medical Center,* 210 F.3d 803, 807-08 (7th Cir.2000).

Because the ERISA plaintiff need only exhaust *available* remedies, there are two recognized exceptions to the exhaustion requirement. Use of the administrative process is not required where there is a lack of meaningful access to review procedures, or if pursuing such internal remedies would be futile. *Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan,* 502 F.3d 725, 729 (7th Cir. 2007). "Futility is demonstrated by showing that it is "certain" a plaintiff's claim will be denied by the plan administrator." *Ruttenberg v. U.S. Life Ins. Co. in City of New York,* 413 F.3d 652, 662 (7th Cir. 2005); see also *Zhou*, 295 F.3d at 680 ("When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply.").[5]

---

[5]A district court's decision to dismiss a complaint for failure to exhaust remedies is reviewed on appeal under an abuse of discretion standard. *Gallegos v. Mount Sinai Medical Center,* 210 F.3d 803, 808 (7th Cir. 2000).

9

Procedurally, exhaustion of administrative remedies is not an element of the plaintiff's claim for benefits, rather it is an affirmative defense. *Shaw v. Doherty Empl. Group,* 2001 WL 290376, at *1 (S.D.Ind. Feb. 7, 2001) (citations omitted); *see also Gallegos v. Mt. Sinai Med. Ctr.,* 210 F.3d 803, 807 (7th Cir.2000). Thus, a plaintiff will survive a motion to dismiss so long as he does not allege facts from which it is clear that he has failed to exhaust administrative remedies. *Med. Alliances, LLC v. Am. Med. Security,* 144 F.Supp.2d 979, 982-83 (N.D.Ill.2001); *Adamczyk v. Lever Bros. Co.,* 991 F.Supp. 931, 934 (N.D.Ill.1997).

Here, the court cannot possibly rule on the Defendant's affirmative defense on the basis of the present record. Parkview did not plead an ERISA claim originally and, as the court has indicated earlier, Parkview is entitled to amend its complaint to properly assert its rights (as an assignee) under the Plan. At that time, it can also plead facts which, if taken as true, would either demonstrate the exhaustion of administrative remedies or support an exception to the exhaustion requirement. Until such time as the amended complaint is filed, it is premature to rule on this issue.[6] Accordingly, the Defendant's Motion to Dismiss based on Parkview's alleged failure to

---

[6] In fact, the Seventh Circuit has expressed its preference that exhaustion issues be decided on "records significantly more plenary" than factual allegations in the plaintiff's complaint. *Wilczynski v. Lumbermens Mut. Cas. Co.,* 93 F.3d 397, 402 -403 (7th Cir. 1996).

In *Wilczynski,* the plaintiff pled facts in her complaint which the court determined were sufficient to allege that the plaintiff was denied meaningful access to a "full and fair" final appeal of her claim for disability benefits. Defendants moved to dismiss claiming that the plaintiff did not exhaust her remedies. The district court agreed and dismissed the complaint. On appeal, the Court reversed the district court after concluding that it was premature to apply the exhaustion doctrine at such an early stage of the litigation:

> We believe it is important to remember, however, that our cases have applied the exhaustion doctrine on records significantly more plenary than the one before us in this case. Unlike the present case, *Powell*, for example, did not involve a motion to dismiss decided solely on the basis of the factual allegations in the plaintiff's complaint; the plaintiff in *Powell* sought review of the entry of summary judgment against him for failing to exhaust his employer's administrative remedies. The same is true of our other

10

exhaust administrative remedies is DENIED.

## Conclusion

Based on the foregoing, the Defendants' Motion to Dismiss is DENIED. Plaintiff has thirty (30) days to file an amended complaint as permitted in this Order.

Entered: This 7th day of January, 2008

s/ William C. Lee
United States District Court

---

cases upholding the exhaustion requirement. *See*, *e.g.*, *Lindemann v. Mobil Oil Corp.,* 79 F.3d 647 (7th Cir.1996) (summary judgment); *Dale v. Chicago Tribune Co.,* 797 F.2d 458 (7th Cir.1986) (summary judgment), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987); *Kross v. Western Elec. Co.,* 701 F.2d 1238 (7th Cir.1983) (summary judgment). At this early stage of the proceedings, we are unable to conclude that the allegations in Ms. Wilczynski's amended complaint are insufficient to demonstrate that Lumbermens denied her meaningful access to final administrative review.

*(Id.)*